Donald E. **DEFFENDALL** and Bettle
Deffendall, Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

Civ. No. 73–877.

United States District Court,
D. Oregon.

Oct. 8, 1974.

Warde H. Erwin, Erwin, Lamb &
Erwin, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., Portland,
Or., James N. Flaherty, Tax Div., Dept.
of Justice, Washington, D. C., for defendant.

OPINION

BURNS, District Judge.

Plaintiff in this tax refund suit has
a license from Dale Carnegie and Associates, Inc. that permits him to con-

duct the well known Dale ·Carnegie Courses. In the tax years at issue, he paid substantial sums, calculated as a percentage of gross tuition, to the person who held the license before him and assigned it to him. When deduction of these sums was disallowed and deficiency assessments, together with interest and late payment penalties, were paid the Plaintiff filed a timely suit for refund. Upon consideration of the stipulated facts, documentary exhibits, memoranda from both parties, and argument at trial, I find and conclude that Taxpayer[1] is not entitled to a refund.

## FACTS

Plaintiff Donald E. Deffendall signed a License Agreement with Dale Carnegie and Associates, Inc. that became effective January 1, 1968. He was authorized to promote, offer, organize, and conduct classes in the Dale Carnegie Courses in Oregon and Southwestern Washington for an initial term ending August 31, 1970. Thereafter, the license was automatically renewable for successive periods of twelve months unless terminated for fraud or by mutual consent. From October 1, 1967, to December 31, 1967, Plaintiff was authorized to act as a licensee of Dale Carnegie under terms and conditions identical, to the extent here pertinent, to those in the License Agreement.

Plaintiff was required to make annual payments to Dale Carnegie of 12% of gross tuitions as a license fee and of 3% of gross tuitions as a contribution to national advertising. Deductibility of these payments as ordinary and necessary business expenses is not disputed. In addition, as a term of the contract in which Plaintiff's predecessor licensee Blanche Wells assigned the license to him, Plaintiff agreed to pay her annually ·for ten years 6% of the gross tuitions, with a ceiling equal to five times the amount of the average annual license fee she had paid to Dale Carnegie

in the three years before the assignment. The payments actually made were $596.40 in 1967, $8,711.64 in 1968, and $10,097.00 in 1969, and the ceiling figure was $54,935.00 Plaintiff deducted these payments from his gross income as ordinary and necessary business expenses.

Subsequently an audit was conducted by the Internal Revenue Service. On March 12, 1971, the Service assessed deficiencies of $4,816.00 plus $354.85 in interest. Additional interest of $491.86 and late payment penalties of $503.52 were assessed prior to plaintiff's completing payment October 15, 1973. Plaintiff filed claims for refund for the taxes ·paid, and after the Internal Revenue Service disallowed the claims, this action was begun.

## ISSUES

As set forth in the pre-trial order, the following are the questions to be determined by the Court:

1. Whether the amounts paid by Plaintiff to Wells were ordinary and necessary business expenses or whether such payments were made for the acquisition of an intangible capital asset, the cost of which must be capitalized?

2. If the payments were made for the acquisition of an intangible capital asset, does this asset have a determinable useful life so as to allow the cost of acquisition to be amortized?

3. Were late payment penalties properly assessed?

## DISCUSSION

The Taxpayer contends that because his obligation to pay money to Wells would cease if Dale Carnegie determined that she were involved in an activity competitive with a Carnegie Course, his payments to her were made in re-· turn for her covenant not to compete. As such, they would be deductible either as current business expenses or alter-

1. Bettie Deffendall is a party to this action only because she filed a joint return with her husband, Donald E. Deffendall, for the years in dispute. References to Plaintiff, therefore,· are to Donald, the named licensee.

natively as amortization of an asset with a determinable life of ten years.

■ (1) The payments to Wells were for a capital asset and are not deductible as ordinary and necessary business expenses. Although enjoyment of a benefit beyond the year in which payment for it was made may not in all circumstances demand capitalization, extended enjoyment combines here with the simple fact that Plaintiff would not have been able to become a Carnegie licensee without agreeing to make these payments to Wells. Noting the Government's allowance of deductions for payments to Dale Carnegie, Taxpayer argues that those to Wells should be similarly treated. If one percentage payment is deductible why not the other? The answer lies in the nature of the obligation. Fees to Dale Carnegie are solely for one year's license privileges and one year's advertising; each year and every year the License Agreement continues Dale Carnegie will get a slice. By contrast, Plaintiff will pay Blanche Wells for ten years or until the dollar limit is reached, and then, without any further obligation to her, he may continue to promote and conduct the Carnegie Courses. Like other expenses of acquiring a business, payments to Wells were for a capital asset.

■ (2) Is the capital asset one with a determinable life so that it may be amortized? A covenant of non-competition for a fixed period may be an amortizable asset, Commissioner of Internal Revenue v. Gazette Telegraph Co., 209 F.2d 926 (10th Cir., 1954), but the parties must have intended specifically to allocate a portion of the purchase price to the covenant not to compete and the allocation must have some reasonable basis. Annabelle Candy Co. v. Commissioner of Internal Revenue, 314 F.2d 1 (9th Cir., 1962). Here, the assignment agreement between Taxpayer and Wells makes no allocation, and the Taxpayer seeks to deduct the full amount of his payments under the assignment; he thus appears to argue that consideration was paid for nothing other than Wells' promise not to compete. If it were shown that the business prospered because of the special character or reputation or skill of Wells, then some allocation to non-competition would be appropriate. But when success is almost wholly dependent upon use of the Dale Carnegie name and methods, which would in any event be denied to Wells because she had ceased to be a licensee, it is unreasonable to find that the Taxpayer agreed to pay her more than $54,000 solely to refrain from activities that would be only marginally damaging to Taxpayer as the new Dale Carnegie licensee in Oregon. Furthermore, the decision as to what is or not competitive remains solely with Dale Carnegie, not with the Taxpayer, and the covenant thus seems aimed at protecting the methods and techniques of Dale Carnegie generally rather than the local success of Taxpayer. In sum, the payments were made either for something not a covenant or for a covenant that was worthless: neither is amortizable over the covenant's ten-year life.

Rather than a covenant of non-competition, the capital asset acquired by Taxpayer was simply a license to carry on the Dale Carnegie business in Oregon. In the words of the Tax Court, "Distilled to its simplest terms, what we have in this case is a third-party beneficiary agreement between Dale [Carnegie] and petitioner wherein, as part of the cost of acquiring the franchise territories worked by his predecessors, petitioner agreed to make the . . . payments in question." Stromsted v. Commissioner of Internal Revenue, 53 T.C. 330 (1969). After the initial term, the license was renewable annually and automatically in the absence of mutual agreement to terminate or the giving of notice after fraud by one party. As indicated by the Plaintiff's enjoyment of the license for more than seven years to date, these terms assure virtually indefinite renewal, thereby making impossible ascertainment of a limited life to support a depreciation deduction. It is

512

not, of course, necessary to establish that the license is perpetual; indeterminate life is sufficient to bar depreciation. *See,* Nachman v. Commissioner of Internal Revenue, 191 F.2d 934 (5th Cir., 1951). Obviously, the ten-year term of Taxpayer's obligation to Wells has no bearing upon the life of the license itself. It may be noted that even if the license had a useful life, it is not clear that it would in fact depreciate. In whatever circumstances the agreement is terminated, the Taxpayer is entitled to receive payments from a subsidiary of Dale Carnegie in exactly the same way Wells is presently receiving them and could well end his tenure as licensee with highly valuable contract rights rather than an exhausted asset.

The *Stromsted* decision quoted above thoroughly discussed the Carnegie Courses, the licensing operation and contract terms, as well as the various fee payments, reaching as I do here the conclusion that payments to predecessors were part of the cost of acquiring a license and that the useful life of the license could not be determined. The Tax Court's careful analysis of the Dale Carnegie system, as well as its acknowledged expertise in tax matters, give its decision great weight. *Stromsted* cannot be distinguished by the interesting theory of income attribution upon which the Taxpayer therein ultimately relied: though the arguments are different, the facts and result are not.

■ Plaintiff has drawn the Court's attention to § 1253 of the Internal Revenue Code, added by the Tax Reform Act of 1969, which permits current deduction as business expenses of contingent payments in respect of the transfer of a license or franchise, like those at issue here. Section 1253(d)(1) applies, however, only to transfers after December 31, 1969. With respect to transfers before that date, the transferee may elect to apply § 1253(d)(1) if payments are made between January 1, 1970, and December 31, 1979. § 516(d)(3), Tax Reform Act of 1969, 83 Stat. 648. This election was made and the Taxpayer successfully deducted his payments in 1970 and 1971. Here, he argues that the Congressional decision to permit current deductions, made as part of a broad revision of the somewhat chaotic tax treatment of franchises and licenses, should be persuasive as to pre-reform transactions. If the statute did not include such careful dating provisions it might be proper to give retroactive weight to the announced Congressional policy, but the provisions *were* included and suggest the intention that transfers falling outside the given dates and exceptions should be treated by general principles of capitalization and deductibility as has been done here.

■ (3) We come finally to the issue of late payment penalties, charged against the Taxpayer for failure to pay assessed deficiencies within the statutory time. Code § 6651(a)(3) establishes penalties for failure to pay "any amount in respect of any tax required to be shown on a return . . . unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The burden of that showing is upon the taxpayer, Rubber Research Inc. v. Commissioner of Internal Revenue, 422 F.2d 1402 (8th Cir., 1970), and that burden has not been sustained here. Plaintiff has introduced no evidence of cause or reasonableness; the penalty is therefore properly assessed.

This Opinion will serve as findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a).

Defendant should submit a proposed form of Judgment.